IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| KELVIN BOYD, | : | |
| Plaintiff, | : : | |
| vs. | : : | Civil Action File No. **1:04-CV-91 (WLS)** |
| SANTOS RODRIGUEZ-GONZALEZ, | : : | |
| Defendant. | : | |

**RECOMMENDATION**

Presently pending in this prisoner § 1983 action is defendant's motion for summary judgment.

Plaintiff, in his affidavit offered in opposition to defendant's motion for summary judgment (Doc. 39) alleges that on July 22, 2002, while incarcerated at the Dougherty County Jail, plaintiff began a verbal altercation with defendant, who was a detention officer at the Dougherty County Jail, over plaintiff's use of a telephone. Plaintiff alleges that several officers then took plaintiff into physical control, handcuffed plaintiff with his hands behind his back, and took plaintiff to the sallyport area of E building at the Jail.

Plaintiff alleges that two detention officers, Kszyminski and Haynes, escorted plaintiff away from defendant, while plaintiff looked back over his shoulder and continued to engage in a verbal altercation with defendant. Plaintiff states that defendant then grabbed plaintiff, threw him against a wall, and then to the ground. While plaintiff was still on the ground, defendant raised a pair of metal handcuffs over his head and swung down , striking plaintiff on the head, causing plaintiff to lose consciousness. While Boyd was still laying on the ground, another

officer intervened and pushed defendant away from plaintiff. Plaintiff was taken to the medical unit at the Jail, and then to a local hospital, where eleven staples were required to close the gash on plaintiff's head.

Plaintiff further alleges that he attended the criminal trial of defendant regarding the incident, and detention officer Kszyminski testified that defendant persuaded the other witnesses to the altercation to coordinate their stories, to make it seem as if plaintiff was injured accidentally when defendant attempted to break plaintiff's fall, and that plaintiff was aggressively moving toward defendant.

Defendant Rodriguez-Gonzalez, states in his affidavit (Doc. 27 Exhibit A) that plaintiff kicked defendant. Defendant then grabbed plaintiff and took him to the floor; during the struggle, defendant's handcuffs made contact with the back of plaintiff's head, causing a 4cm laceration.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio corp., 475 U.S. 574 (1986)). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate

that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The Eighth Amendment's proscription of cruel and unusual punishments governs prison officials' use of force against convicted inmates. See Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). When the conduct in question involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. 1078; see also Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Discussing this heightened specific-intent requirement in Whitley, the Supreme Court reiterated that force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." 475 U.S. at 319, 106 S.Ct. 1078. Reviewing the force used to quell a prison riot in Whitley, the Court explained that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Id. at 320-21, 106 S.Ct. 1078.

Subsequently, in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court extended Whitley 's holding outside the prison-riot context and applied the

same heightened intent requirement to force used as a prophylactic, preventive measure. See Whitley, 475 U.S. at 322, 106 S.Ct. 1078 (acknowledging the distinction). The Hudson Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7, 112 S.Ct. 995. The Court reasoned that even absent the exigency present during a riot-like disturbance, " ' "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." ' " Hudson, 503 U.S. at 7, 112 S.Ct. 995 (quoting Whitley, 475 U.S. at 321-22, 106 S.Ct. 1078 (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979))). Thus, Hudson dictates that Whitley's standard--force applied maliciously and sadistically to cause harm--applies to all claims that prison officials used excessive force against convicted prisoners.

In addition to defining the mental state required, Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Whitley, 475 U.S. at 321, 106 S.Ct. 1078; see also Hudson, 503 U.S. at 7, 112 S.Ct. 995. Whitley also narrows the precise inquiry applicable when deciding whether officials are

entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322, 106 S.Ct. 1078

As the Supreme Court stated in Rhodes v. Chapman, 452 U.S. 337, 349, n. 14, 101 S.Ct. 2392, 2400, n. 14, 69 L.Ed.2d 59 (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior," Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

Plaintiff has also filed in support of his opposition to defendant's motion for summary judgment portions of the trial transcript from defendant's criminal trial in the United States District Court for the Middle District of Georgia (USA v. Ruiz-Gonzalez, 1:03-CR-32), including the testimony of one witness to the incident, Officer Thomas Kszyminski.

Kszyminski states that he saw plaintiff with his hands handcuffed behind his back and defendant having a verbal argument, wherein both plaintiff and defendant were cursing and yelling at one another. Kszyminski states that plaintiff did not make any aggressive moves toward defendant or any other officers. (Trans. p. 10, 20). Kszyminski confirms that he was leading plaintiff away in handcuffs, with defendant behind them, when plaintiff continued yelling over his shoulder back to defendant. (Trans. p. 11-12). Kszyminski states that defendant then grabbed plaintiff by his jumpsuit and placed him against the wall, with his face against the wall, then defendant took plaintiff to the floor. (Trans. p.12-14). Plaintiff was laying on his back, and tried to sit up, by rocking back and forth since his hands were still handcuffed behind his back. (Trans. p. 14). Kszyminski then testified that he saw defendant raise his handcuffs over his head and strike the plaintiff on the top of the head. (Trans. p. 15). Kszyminski testified that another officer then pushed defendant away from plaintiff, who was still unconscious and bleeding from his head wound. (Trans. p. 20).

Kszyminski testified that he wrote a false report about the incident because the officers were expected to back up each other. (Trans. p. 29). Kszyminski further testified that he spoke with defendant about the incident, and the other officers about it as well, and submitted a false report of the incident. (Trans. p. 45-47).

Kszyminski testified that he heard rumors that the FBI was investigating the incident, and decided to voluntarily cooperate with the investigation; however, initially he stuck with the same story as contained in his report, and only later admitted to lying to the FBI, for which he was charged, plead guilty, and was sentenced after defendant's trial. (Trans. p. 56-66).

It appears to the undersigned that plaintiff has shown as sufficient issue of fact so as to

preclude summary judgment.  There is a genuine dispute in the record as to whether the force used was reasonable, depending on the version of facts presented by defendant or plaintiff, especially in light of the sworn testimony of Kszyminski which confirms plaintiff's allegations. If plaintiff's version of the facts is believed by a jury, a jury could conclude that defendant used excessive and unnecessary force, and thus violated plaintiff's constitutional rights.  Resolving all factual issues in favor of the plaintiff as the nonmovant, it appears that this is not a case suitable for summary judgment.

   Accordingly, it is the recommendation of the undersigned that defendant's motion for summary judgment be **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 4th day of August, 2006.

        //S Richard L. Hodge
        RICHARD L HODGE
        UNITED STATES MAGISTRATE JUDGE

msd